UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Tanya L.,

    Plaintiff,

v.                                                 Civil Action No. 2:17-cv-136

Commissioner of Social Security,

    Defendant.

**OPINION AND ORDER**
(Docs. 11, 12)

Plaintiff Tanya L. brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). Pending before the Court are Plaintiff's motion to reverse the Commissioner's decision (Doc. 11), and the Commissioner's motion to affirm the same (Doc. 12). For the reasons stated below, Plaintiff's motion is DENIED, and the Commissioner's motion is GRANTED.

**Background**

Plaintiff was 31 years old on her alleged disability onset date of November 23, 2013. She struggled in school and dropped out after the ninth grade. She has had many jobs over the years, including as a cashier and a cleaner, but each for only a very brief period. Her last job was at a Kmart in West Lebanon, New Hampshire in 2013. Plaintiff is divorced and has four children, approximately ages 10, 15, 17,

and 18. As of January 2016, she was living in an apartment in Middlebury with her children and her boyfriend.

Plaintiff has a long history of trauma beginning in early childhood and continuing into adulthood. As a child, she was physically abused by her parents (primarily her mother) and her brothers. She made a complaint to the State and was removed from the home and placed in foster care at the age of 12 or 13. She began receiving mental health treatment, and was diagnosed with attention deficit hyperactivity disorder (ADHD), posttraumatic stress disorder (PTSD), depression, and anxiety.

Plaintiff was pregnant at the age of 16 by a man who was 31 years old. She moved to Florida and then to California with a different man, John, later returning to Vermont to live with her mother for about a month before she aged out of custody. Thereafter, she lived with John, who she married in May 2001 and with whom she had two more children. John physically and verbally abused Plaintiff and had substance abuse problems. The couple divorced in July 2009, with Plaintiff receiving custody of the children.

In April 2010, Plaintiff was raped by an intruder in Winooski. Later that year, she moved to Ohio with a new boyfriend who also physically and verbally abused her. In September 2010, Plaintiff was involved in an automobile accident. She moved back to Vermont in October 2011, briefly staying with friends before moving into a motel in Middlebury with her children. At some point, Plaintiff met and became engaged to a man named Bruce, who appears to be (the record is unclear on this) the father of her fourth child. In 2012, six days before their wedding, Bruce was killed in

2

a motorcycle accident. After his passing, Bruce's family evicted Plaintiff from his house, and Plaintiff lived in her car while her children moved in with her mother. Thereafter, Plaintiff met her current boyfriend, Justin; and she and her children moved into Justin's home in Royalton.

Given the abuse she has suffered over the years, Plaintiff has psychological problems, including feeling fearful and helpless, and experiencing recurrent intrusive recollections and dreams of the abuse. She also feels detached and estranged from people, has difficulty concentrating, is afraid to go out alone, has low energy, and has feelings of worthlessness and guilt. In addition to her mental problems, Plaintiff suffers from neck pain, back pain, and numbness and tingling in her hands, legs, and feet.

On a typical day during the alleged disability period, Plaintiff got her children ready for school in the morning, with Justin's help. (AR 57, 627.) Often, she then returned to bed until the children returned home after school. (*Id.*) Justin, who was unemployed, did most of the household chores including cooking and cleaning, with the help of Plaintiff's daughter. (AR 56, 627.)

On March 5, 2014, Plaintiff filed an application for SSI, alleging that, starting on November 23, 2013, she has been unable to work due to ADHD, PTSD, anxiety, depression, back problems, and neck pain. (AR 119.) Plaintiff explained that she has held many jobs lasting only one or two weeks because she "'do[es]n't feel like doing [the job]'" and she "'sleep[s] all the time.'" (AR 390.) She has tried looking for jobs, but found that "'nothing interested [her].'" (*Id.*) Plaintiff's SSI application was denied initially and upon reconsideration, and Plaintiff timely requested an

3

administrative hearing. The hearing was conducted on January 13, 2016 by Administrative Law Judge (ALJ) Joshua Menard. (AR 31–65.) Plaintiff appeared and testified, and was represented by an attorney. A vocational expert (VE) also testified. On February 12, 2016, the ALJ issued a decision finding that Plaintiff had not been under a disability under the Social Security Act since the date her application was filed. (AR 17–25.) Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1–3.) Having exhausted her administrative remedies, Plaintiff filed the Complaint in this action on July 24, 2017. (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

4

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Menard first determined that Plaintiff had not engaged in substantial gainful activity since March 5, 2014, the date of her application. (AR 19.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, depression, and anxiety. (*Id*.) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 19–21.) Next, the ALJ determined that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b), except as follows:

5

> [Plaintiff] can frequently climb ladders and scaffolds. She is limited to performing simple, routine tasks[;] and can frequently respond appropriately to supervisors and coworkers. She can occasionally respond appropriately to the public and is limited to simple work-related decisions.

(AR 21.) Given this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work as a cashier or commercial cleaner. (AR 24.) Finally, based on testimony from the VE, the ALJ determined that Plaintiff could perform other jobs existing in significant numbers in the national economy, including cleaner, price marker, and document preparer/scanner. (AR 24–25.) The ALJ concluded that Plaintiff had not been under a disability since her application was filed. (AR 25.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v.*

6

*Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Plaintiff argues that the ALJ erred in failing to weigh the medical evidence according to the regulations, and more particularly, failing to consider the opinions of nonexamining agency consultant Dr. Ellen Atkins. (Doc. 11 at 2.) Plaintiff further contends that the ALJ should have stricken the VE's testimony from the record because "it appears [the VE] intentionally misled the tribunal." (*Id.*) In response, the Commissioner argues that the ALJ made no legal errors and the record contains substantial evidence to support the ALJ's decision. (Doc. 12.)

I.  **ALJ's Analysis of the Medical Opinions**

After explaining his decision to give "great weight" to the opinions of several examining and nonexamining medical consultants (AR 22–23), the ALJ stated that

7

he "accord[ed] little weight to the opinions submitted by [Plaintiff's] treating physicians and counselors" because these opinions "are conclusory in nature and provide no explanation of the evidence relied on in forming [them]." (AR 23.) The ALJ explained that these opinions "did not document positive objective clinical or diagnostic findings to support any of the statements made in their medical source statements." (*Id.*) Plaintiff argues that the second statement quoted above improperly "use[s] the criteria for controlling weight—well-supported by medically acceptable clinical and laboratory diagnostic techniques—to give the opinions little weight." (Doc. 11 at 5.)

Under the "treating physician rule," a treating source's opinion on the nature and severity of the claimant's condition is entitled to "controlling weight" if it is "well[] supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2)[1]; *see Schisler v. Sullivan*, 3 F.3d 563, 567–69 (2d Cir. 1993). When, however, as here, controlling weight is *not* given to a treating source's opinions, the ALJ must consider the following "factors" in determining how much weight, if any, to give the opinions: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether the opinions are *supported* by relevant medical evidence or

---

[1] The Social Security Administration recently adopted regulations that change the standards applicable to the review of medical opinion evidence for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources. . . . [W]e will consider those medical opinions . . . together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."). Because Plaintiff filed her claims before March 2017, however, the Court applies the treating physician rule under the earlier regulations (20 C.F.R. § 416.927), and not under the more recent ones (20 C.F.R. § 416.920c).

8

explanation; (4) whether the opinions are *consistent* with the record as a whole; (5) the specialization of the treating source with respect to the condition being treated; and (6) any other factors that may be significant. 20 C.F.R. § 416.927(c)(2); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

Treating source opinions may be rejected based on the ALJ's proper consideration of any of these factors, and the ALJ need not expressly recite each factor in his decision. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no . . . slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.") (citing *Halloran*, 362 F.3d at 31–32). Nonetheless, ALJs must give "good reasons" for the weight they assign to a treating source's opinions, 20 C.F.R. § 416.927(c)(2), and failure to do so is ground for remand, *Halloran*, 362 F.3d at 33. Examples of "good reasons" to discount the opinions of a treating source include the following: the opinions are inconsistent with the bulk of the other substantial evidence, such as the opinions of other medical sources, *see, e.g.*, *Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641, 643–44 (2d Cir. 2007); the opinions are internally inconsistent, *see, e.g.*, *Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012); the physician's relationship to the claimant was "limited and remote," *see, e.g.*, *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011); the treating source gave only brief, conclusory opinions unsupported by clinical findings or other evidence, 20 C.F.R. § 416.927(c)(3); or the treating source lacked expertise in the relevant medical specialty, *id.* at (c)(5).

The Plaintiff's argument that the ALJ erred in using the criteria for affording treating source opinions controlling weight in the context of affording Plaintiff's

9

treating source opinions little weight is meritless, as the applicable regulation implicitly contemplates a similar analysis with respect to both opinions that receive controlling weight and those that receive less than controlling weight. *See* 20 C.F.R. § 416.927(c). Moreover, the regulation explicitly directs as follows with respect to assessing the weight of a treating source opinion that is not entitled to controlling weight: "The more a medical source presents relevant evidence to support a medical opinion, *particularly medical signs and laboratory findings*, the more weight we will give that medical opinion." *Id.* at (c)(3) (emphasis added). Therefore, the ALJ's consideration of whether the opinions of Plaintiff's treating physicians and counselors "document[ed] positive objective clinical or diagnostic findings [in support thereof]" (AR 23) was proper.

Moreover, the ALJ explicitly and unambiguously applied a significant regulatory factor—supportability—in assessing the opinions of Plaintiff's treating sources. (*Id.*) Specifically, the ALJ found that the opinions of Plaintiff's treating sources were "conclusory in nature," another way to say unsupported, a factor listed in 20 C.F.R. § 416.927(c)(3) and discussed above. ALJs are clearly entitled to afford less weight, or even no weight, to treating source opinions that are "conclusory and unsupported by clinical findings." *Orts v. Astrue*, No. CIV.A. 5:11-512, 2012 WL 6803588, at *5 n.8 (N.D.N.Y. Nov. 14, 2012), *report and recommendation adopted*, No. 5:11-CV-0512 LEK/ESH, 2013 WL 85071 (N.D.N.Y. Jan. 7, 2013) (citing *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005) (ALJ justified in giving little weight to treating physician opinions, where opinions contained "statements that [we]re brief and conclusory, *not supported by medically acceptable clinical laboratory diagnostic*

10

*techniques*, or otherwise unsupported by the evidence" (internal quotation marks omitted)); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"); *Alvarado v. Barnhart*, 432 F. Supp. 2d 312, 320 (W.D.N.Y. 2006) ("Appeals Council would have been justified in rejecting [treating physician's] opinion that plaintiff could not work until after she had knee surgery, since that conclusory opinion was inconsistent with the other medical evidence in the record, and was not supported by any test results, or indeed by any stated diagnostic techniques")).

Further, the Court is able to glean from the ALJ's decision that he considered another important factor—consistency with the record—in assessing the opinions of Plaintiff's treating sources. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The ALJ implicitly found that the treating source opinions were inconsistent with the consulting and reviewing medical opinions, as well as with imaging studies, normal physical examinations, and Plaintiff's reported daily activities of living[2]. (*See* AR 22–23.) Because a comparison of this evidence

---

[2] Plaintiff asserts that she could not complete many of her daily activities, including caring for her four children, without the help of others, particularly her boyfriend Justin. (*See* Doc. 13 at 2–3.) But there is substantial evidence supporting the ALJ's finding that Plaintiff "perform[ed] a wide variety of daily activities in spite of [her] alleged functional limitations arising from her impairments" (AR 22). (*See, e.g.*, AR 244 ("excited to get back to work"; "the last [six] years she was raising her kids"), 655 ("able to care for children and home with assistance of fiancée"), AR 718 ("staying with a friend when she doesn't have her children"), 918 ("takes care of her [four] children by herself").) It is within the ALJ's—not the court's—discretion to resolve these genuine conflicts in the evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("[W]e do not substitute our judgment for the agency's . . . [;] [i]n our review, we defer to the Commissioner's resolution of conflicting evidence.").

11

reveals the inconsistency (*compare, e.g.*, AR 130, 132, 392, 629, 817, 881, 918, 942, *with* AR 676, 804, 805), the ALJ's failure to explicitly consider the "consistency" factor in assessing the value of Plaintiff's treating source opinions was harmless error at most, and remand is unnecessary on this ground. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Remand is unnecessary . . . [w]here application of the correct legal standard could lead to only one conclusion." (internal quotation marks omitted) (alteration in original)); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration."); *see also Filichko v. Colvin*, No. 15CV00525AJNSN, 2016 WL 3166899, at *7 (S.D.N.Y. Apr. 27, 2016), *report and recommendation adopted*, No. 15-CV-525 (AJN), 2016 WL 3197134 (S.D.N.Y. June 6, 2016) (where court could "glean findings under factors 3, 4, and 5 from the ALJ's opinion," "ALJ's failure to follow punctiliously the structured analysis described in 20 C.F.R. § 416.927(c) was not reversible error"); *Petrie*, 412 F. App'x at 406–07 (claimant's contention that ALJ failed to consider all relevant factors in giving treating physician's opinion minimal weight was without merit because court could "glean the rationale of [the] ALJ's decision" (internal quotation marks omitted)).

Substantial evidence supports the ALJ's finding that the treating source opinions are entitled to little weight because they are unsupported and inconsistent with the record. The only opinions discussed on this point in Plaintiff's brief are the opinions of treating psychiatrist Dr. Evelyn Gerretson. (*See* Doc. 11 at 6–8.) Plaintiff began treatment with Dr. Gerretson on January 4, 2015. (AR 755.) On January 15,

and October 15, 2015, respectively, Dr. Gerretson opined on "Temporary Medical Deferment" forms issued by the Vermont Department for Children and Families Economic Services Division, that Plaintiff could not engage in any work activities on a weekly basis due to her mental impairments, including depression, PTSD, social anxiety, ADHD, panic attacks, and bipolar disorder. (AR 676, 805.) In a form dated October 1, 2015 (between the dates of the other two forms), Dr. Gerretson opined that Plaintiff could engage in work activities for 10 hours per week. (AR 804.)

The ALJ was not required to give Dr. Gerretson's opinions significant weight because the opinions primarily address the ultimate question of disability, concluding that Plaintiff is unable to work, which is an issue reserved to the Commissioner. The regulations provide that "[a] statement by a medical source that [the claimant is] 'disabled' or 'unable to work,'" 20 C.F.R. § 416.927(d)(1), is not a medical opinion but an "opinion[] on [an] issue[] reserved to the Commissioner because [it is an] administrative finding[] that [is] dispositive of [the] case; i.e., that would direct the determination or decision of disability," *id.* at § 404.1527(d). *See Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003) (holding that doctor's opinion that claimant was "'temporarily totally disabled'" was entitled to no weight, "since the ultimate issue of disability is reserved for the Commissioner"); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance[, as g]iving controlling weight to such opinions would . . . confer upon the treating source the authority to make the . . . decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory

responsibility to determine whether an individual is disabled"). Further, as the ALJ noted, Dr. Gerretson's opinions are conclusory: they fail to explain what evidence the Doctor relied on in formulating them. *See Halloran*, 362 F.3d at 31 n.1 (standardized form furnished by the New York State Office of Temporary and Disability Assistance "only marginally useful for purposes of creating a meaningful and reviewable factual record" in disability case).

Also, Dr. Gerretson's opinions conflict with those of agency consultants Dr. Edward Hurley and Dr. Ellen Atkins, who opined in May 2014 and August 2014, respectively, that Plaintiff was able to perform a range of limited work despite her mental impairments. (*See* AR 113–15, 129–31.) Plaintiff claims the ALJ erred in failing to discuss Dr. Atkins's August 2014 opinions (*see* Doc. 11 at 8–9), but the Court finds no error given that these opinions mirror those of Dr. Hurley (*compare* AR 114–15 *with* AR 130–31), and the ALJ properly considered the opinions of Dr. Hurley in his decision (*see* AR 23). Plaintiff claims the ALJ should have adopted Dr. Atkins's (and Dr. Hurley's) opinion that Plaintiff could perform only "1–3 step tasks" "with social restrictions" in his RFC determination. (AR 115, 130; *see* Doc. 11 at 9.) But an ALJ's RFC determination need not "perfectly correspond with any of the opinions of medical sources," so long as the ALJ "weigh[ed] all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013.) Moreover, the opinions of Dr. Atkins and Dr. Hurley are largely consistent with the ALJ's RFC determination on this point, given that the ALJ found that Plaintiff could do only "simple, routine tasks" and make only "simple" work-related decisions (AR 21), which generally

14

accounts for a limitation to one-to-three step tasks. *See Barca v. Comm'r of Soc. Sec.*, No. 2:16–cv–187, 2017 WL 3396416, at *5 (D. Vt. Aug. 8, 2017) (simple, unskilled work accounted for limitation to one-to-three step tasks). The ALJ's RFC determination also accounted for Dr. Atkins's and Dr. Hurley's opinions that Plaintiff was socially restricted (*see* AR 129–31) by including a limitation to only occasional interaction with the public and no more than frequent contact with coworkers and supervisors (AR 21).

In sum, the ALJ did not err in his analysis of the medical opinions, and substantial evidence supports the ALJ's findings. Regarding the latter point, as the ALJ discussed in his decision (AR 22), many of Plaintiff's treatment records documented unremarkable mental status findings. (*See, e.g.*, AR 611, 645, 656, 673, 780, 802, 813, 857, 939.) And examining consultant psychologist Marc Carpenter, MA, opined that Plaintiff was "cooperative" and "socially appropriate," and showed no signs of a cognitive impairment. (AR 391–92.) Both Carpenter and examining consultant counselor Terry Padilla assessed Plaintiff with Global Assessment of Functioning (GAF)[3] scores indicating only moderate, or borderline moderate, difficulties. (*See* AR 392, 629.) *See generally Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (RFC limitations of completing only "simple tasks" in a "low-stress environment" accounted for consulting medical source assessments of mild and moderate limitations). Moreover, none of Plaintiff's treating or examining providers–

---

[3] "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler v. Astrue*, 546 F.3d 260, 262 n.1 (2d Cir. 2008) (quoting *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) (DSM-4)).

–other than Dr. Gerretson, whose opinions are deficient for the reasons discussed above—indicated that Plaintiff had anything more than moderate functional limitations. *See Zabala*, 595 F.3d at 410. Although there was medical evidence indicating that Plaintiff's back and neck pain, depression, and anxiety limited her ability to work, the ALJ's determination that there were nonetheless some jobs that Plaintiff could perform, is supported by substantial evidence. *See Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) (ALJs need not "reconcile explicitly every conflicting shred of medical testimony").

## II. ALJ's Reliance on Vocational Expert Testimony at Step Five

Next, Plaintiff claims that the VE "seems to have intentionally misled" the ALJ about the "Document Preparer, Microfilming" position, and thus "all of [the VE's] testimony is suspect and should be stricken from the record." (Doc. 11 at 10.) Specifically, Plaintiff finds error in the VE's failure to advise the ALJ that the document preparer position involves preparing documents "*for microfilming.*" (*Id.* (emphasis added).) The Court finds no merit to this argument, as there is no requirement for the VE to mention that "microfilming" was part of the document preparer job.

Even assuming the ALJ erred in relying on the VE's testimony regarding this job, the error was harmless because the VE testified to two other jobs existing in significant numbers in the national economy that Plaintiff could perform—cleaner and price marker—and Plaintiff has not demonstrated any error regarding the ALJ's adoption of that testimony. (*See* AR 25, 62–63.) The regulations require that a significant number of jobs exist in only "one or more occupations." 20 C.F.R. §

404.1566(b). Therefore, even if Plaintiff was able to perform only one of the three jobs that the ALJ determined existed in significant numbers in the national economy, a finding of not disabled would be appropriate. *See Martin v. Comm'r of Soc. Sec.*, No. 5:06-CV-720 (GLS/DEP), 2008 WL 4793717, at *12 (N.D.N.Y. Oct. 30, 2008) ("[E]ven the finding that one job exists in sufficient numbers in the national economy capable of being performed by the plaintiff is sufficient to sustain the Commissioner's burden at step five.").

## Conclusion

For these reasons, the Court DENIES Plaintiff's motion (Doc. 11), GRANTS the Commissioner's motion (Doc. 12), and AFFIRMS the decision of the Commissioner. The Clerk shall enter judgment on behalf of the Commissioner.

Dated at Burlington, in the District of Vermont, this 5th day of June 2018.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge